# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-03008 MMM (CWx) | Date | June 18, 2009 |
|---|---|---|---|

| Title | *Wilshire Associates, Inc. v. Ashland Partners & Co., LLP* |
|---|---|

| Present: The Honorable | MARGARET M. MORROW | |
|---|---|---|
| ANEL HUERTA | | |
| Deputy Clerk | | Court Reporter |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **Order Denying Defendant's *Ex Parte* Application for Reconsideration and Granting Defendant's Request for Certification of Interlocutory Appeal**

### I. BACKGROUND

On May 17, 2007, plaintiff Wilshire Associates, Inc. and defendant Ashland Partners & Co., LLP entered into the agreement on which this action is based. The agreement contains a jury trial waiver, which states: "EACH PARTY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT." The agreement also provides that it is governed by California law. On May 7, 2008, Wilshire initiated the present action. Ashland filed an answer on June 10, 2008, which contained a jury trial demand.

On April 20, 2009, Wilshire filed a motion to strike Ashland's jury demand. The court granted the motion on May 20, 2009. The court concluded that federal law governed the right to jury trial in federal court, and held that the contractual jury trial waiver was enforceable under federal law because Ashland did not dispute that it was knowing and voluntary. In reaching this conclusion, the court declined Ashland's invitation to adopt the reasoning of *Financial Technology Partners L.P. v. FNX Ltd.*, No. C 07-01298 JSW, 2009 WL 464762 (N.D. Cal. Feb. 24, 2009). The *Financial Technology Partners* court held that held that, where a contract contains a California choice of law provision, California law controls the enforceability of a contractual jury trial waiver in federal court. *Id.* at *2. On May 28, Ashland filed an *ex parte* application for reconsideration of the court's order.

Alternatively, it seeks an order certifying the issue for interlocutory appeal.

## II.  DISCUSSION

### A.  Standard Governing Motions for Reconsideration

A party may seek relief from a court order under Rule 60(b) of the Federal Rules of Civil Procedure.  See FED. R. CIV. PROC. 60(b).  The motion must be made "within a reasonable time, and . . . not more than one year after the judgment, order, or proceeding was entered or taken." *Id.* Under the Local Rules,

> "[a] motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of a new material fact or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." CA CD L.R. 7-18.

Ashland asserts that reconsideration is warranted given the decision of a Middle District of Georgia court in *GE Commercial Finance Business Property Corp. v. Heard*, Nos. 4:08-CV-137CDL, 4:08-CV-138CDL, 2009 WL 1409977 (M.D. Ga. May 18, 2009).  This decision was issued two days prior to the court's order.  In *GE Commercial*, the court held that a contractual jury trial waiver that was not enforceable under Georgia law could not be enforced in federal court because the contract contained a Georgia choice of law provision. *Id.* at *3.

The *GE Commercial* court applied the same body of law regarding jury trial waivers in federal court that the court applied in reaching its decision here.  Existing federal precedent regarding the validity of jury trial waivers has not changed since the court's decision.  Accordingly, the court finds no basis for reconsideration of its prior order and denies Ashland's application to the extent it seeks such relief.

### B.  Standard for Certification of an Interlocutory Appeal Under 28 U.S.C. § 1292(b)

As a general rule, an appellate court does not review a district court ruling until after the entry of final judgment.  See 28 U.S.C. § 1291; *Hansen v. Schubert*, 459 F.Supp.2d 973, 999 (E.D. Cal. 2006) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978), and *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982), aff'd sub nom. *Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983)).  There are situations, however, in which "appellate review of a particular ruling will materially advance disposition of the claims before the trial court." *Morrison-Knudsen Co., Inc. v. Archer*, 655 F.2d 962, 966 (9th Cir. 1981).  In such cases, "the appropriate procedure for the district court is to certify its order for interlocutory appeal under 28 U.S.C. s 1292(b)." *Id.*  Section

1292(b) provides:

> "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b).

"An interlocutory appeal should be granted 'only in exceptional situations in which allowing [such an appeal] would avoid protracted and expensive litigation.'" *Hansen*, 459 F.Supp.2d at 999-1000 (quoting *In re Cement Antitrust Litig.*, 673 F.2d at 1026). "The party seeking certification of an interlocutory appeal has the burden to show the presence of those exceptional circumstances." *Id.* (citing *Coopers & Lybrand*, 437 U.S. at 474-75).

Before certifying an order under § 1292(b) for immediate appeal, a district court must make three findings: (1) that the order involves a controlling question of law about which (2) there is substantial ground for difference of opinion, and (3) that an immediate appeal will "advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); see also *In re Cement Antitrust Litig*. 673 F.2d at 1026. If the district court includes these findings in its order, the circuit court then evaluates "whether the district court has properly found that the certification requirements of [§ 1292(b)] have been met," and whether it will, in its discretion, permit the appeal. *In re Cement Antitrust Litigation*, 673 F.2d at 1026. This "mechanism permits the Court of Appeals to protect its docket by determining for itself whether to accept the issue for review." *Morrison-Knudsen*, 655 F.2d at 966.

      C.      **Whether the Jury Trial Waiver Issue Should Be Certified for Interlocutory Appeal**

            1.      **Whether the Order Striking Ashland's Jury Demand Involves a Controlling Question of Law**

A question of law is controlling if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. Courts have found that the right to jury trial is a controlling issue. *City of Hope Nat. Medical Center v. Blue Cross of California*, 928 F.Supp. 1001, 1004 (C.D. Cal. 1996) ("[T]he Court is persuaded that the right to a trial by jury is a fundamental right which involves a controlling issue of law"); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, M. D. L. No. 189, 1979 WL 1689, *2 (E.D. Pa. Aug. 21, 1979) ("As defendants assert, jury and bench trials necessitate different litigation strategies,

allocations of court time, and expense to the parties. These factors alone are sufficiently weighty, even if the possibility of reversible error were absent, to justify our determination that the order involves a controlling question of law"); see also *Standard Oil Co. of California v. Arizona*, 738 F.2d 1021, 1022 (9th Cir. 1984) (considering parties' right to a jury trial in the context of an interlocutory appeal); see generally 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3931 n. 63 (collecting cases treating denial of jury trial as issue appropriate for interlocutory appeal). The court therefore concludes that the issue raised by Ashland involves a controlling question of law.

### 2. Whether There are Substantial Grounds for Difference of Opinion

The Ninth Circuit has observed that § 1292(b) "was not intended merely to provide review of difficult rulings in hard cases." *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966). Rather, as noted, to demonstrate that certification for appeal is appropriate, defendant must show that there exist substantial grounds for differences of opinion on the issue in question. 28 U.S.C. § 1292(b).

Numerous courts have concluded that the enforceability of a contractual jury trial waiver in federal court is a question of federal law, even in diversity actions. These courts have relied on the Supreme Court's statement in *Simler v. Conner*, 372 U.S. 221, 222 (1963) that "the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions." They have also relied on the principle, stated in *Brookhart v. Janis*, 384 U.S. 1, 4 (1966), that "[t]he question of a waiver of a federally guaranteed constitutional right is . . . a federal question controlled by federal law."

The First, Second, Third, and Tenth Circuits have explicitly held that the enforceability of a jury trial waiver is a question of federal law. See *Tracinda v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3rd Cir. 2007) (stating that "[t]he question of a waiver of a constitutional right, including the Seventh Amendment right to a jury trial, is a federal question controlled by federal law," and that "[f]ederal courts apply federal law in determining whether a contractual jury trial waiver is enforceable"); *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007) (observing, in a case involving a contractual waiver, that "[w]hen asserted in federal court, the right to a jury trial is governed by federal law"); *Medical Air Technology Corp. v. Marwan Investment, Inc.*, 303 F.3d 11, 18 (1st Cir. 2002) ("In a diversity jurisdiction suit, the enforcement of a jury waiver is a question of federal, not state, law"); *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988) (observing, in a case involving a contractual waiver, that "[t]he right to a jury trial in the federal courts is governed by federal law"); see also *K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752, 755-56 (6th Cir. 1985) (approving a magistrate judge's conclusion that "the constitutional right to jury trial may only be waived if done knowingly, voluntarily and intentionally, and that whether this standard was met in a given case is a constitutional question separate and distinct from the operation of rules of substantive contract law like the parol evidence rule"). While this precedent appears to present a solid basis upon which to hold that jury trial waivers should be

interpreted according to federal law, it does not appear that the courts issuing the decisions were squarely presented with an argument that state, rather than federal, law governed the question.

In *IFC Credit Corp. v. United Business & Indus. Federal Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008), the Seventh Circuit directly addressed whether state or federal law governs the enforceability of a contractual jury waiver in federal court. It concluded that state law controls in cases in which state law governs the substantive dispute. *Id.* In support of this conclusion, the *IFC Credit* court cited the Seventh Circuit's earlier holding in *Abbott Laboratories v. Takeda Pharmaceutical Co.*, 476 F.3d 421 (7th Cir. 2007), that "the validity of a forum-selection clause depends on the law of the jurisdiction whose rules will govern the rest of the dispute." It observed: "Taking the same approach here means that Illinois law determines the validity of the waiver in the contract, for the pact selects Illinois substantive law as well as an Illinois judicial forum." *Id.*

The Seventh Circuit rejected the argument that *Simler* required application of federal law in assessing the validity of the waiver. Although earlier decisions had relied on *Simler*'s broad statement that "the right to a jury trial in the federal courts is to be determined as a matter of federal law," the *IFC Credit* court concluded that the pronouecement should be read narrowly given the question at issue in *Simler* – i.e., what law governed whether a claim is legal or equitable such that there is a right to jury trial. It stated: "*Simler* holds that the classification of a dispute as 'legal' or 'equitable' must be made under federal norms: after all, the phrase 'at common law,' which guarantees a right to trial by jury, is in the seventh amendment, and [the] meaning of this phrase therefore must be a matter of federal law. It does not follow that national law also controls the validity of a contractual agreement to a bench trial." *Id.*

The Seventh Circuit also reasoned that the validity of contractual provision is a matter of general contract law, which, under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), is necessarily state law. It stated: "There is no general federal law of contracts after *Erie* [ ]; if 'federal law' did control, the best it could do would be to use state law as the rule of decision. See *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 [ ] (1979)." *Id.* at 991-92.

The Seventh Circuit's approach in *IFC Credit* stands in sharp contrast to the approach of other circuit courts, which have reasoned that a federal standard governs the waiver of a federal right. See, e.g., *Tracinda*, 502 F.3d at 222 ("The question of a waiver of a constitutional right, including the Seventh Amendment right to a jury trial, is a federal question controlled by federal law," citing *Brookhart*, 384 U.S. at 4 and *In re City of Phila. Litig.*, 158 F.3d 723, 726 (3d Cir. 1998)). Under the view adopted by these courts, the validity of a jury waiver is more than simply a matter of state contract law; because it impacts the exercise of a federal right, it is a matter of federal concern.

The district courts in the Ninth Circuit have not addressed the issue uniformly. Ashland's initial motion relied on *Financial Technology Partners*, 2009 WL 464762. The *Financial Technology Partners* court held that held that, where a contract contains a California choice of law provision, California law controls the validity of a jury trial waiver. *Id.* at \*2. The court based its analysis on

the California Supreme Court's decision in *Grafton Partners L.P. v. Superior Court*, 36 Cal.4th 944 (2005). In *Grafton*, the Court concluded that "governing California constitutional and statutory provisions do not permit predispute jury waivers." *Id.* at 967. It first noted that the right to jury trial preserved under Article I, section 16 of the California Constitution could "be waived only as the Legislature prescribes." *Id.* at 955. It then interpreted California Code of Civil Procedure § 631(d) as prohibiting pretrial waivers of the right to jury trial. *Id.* at 956-61. As *Grafton* makes clear, California law is more protective of the jury trial right than federal law. Noting this, the court cited *Simler* for the proposition that "[t]he federal policy favoring jury trials is of historic and continuing strength." As a consequence, it reasoned that applying California law would promote the policy favoring jury trials that underlies the rule that federal law governs the right to jury trial. See *Financial Technology Partners*, 2009 WL 464762 at *2. The court also observed that because California's prohibition of jury trial waivers "is premised on an interpretation of the California Constitution," "applying California law . . . would not undermine the uniformity of enforcing the Seventh Amendment." See *id.* As a result, it found the parties' contractual jury waiver unenforceable under California law.

In its order granting Wilshire's motion to strike, the court disagreed with *Financial Technology Partners*. The court stated:

> "Although *Simler* based its conclusion that federal law governed the right to jury trial in part on a 'federal policy favoring jury trials,' 372 U.S. at 222, there is also 'a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts.' *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 538 (1958). 'The federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction. An essential characteristic of that system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury.' *Id.* at 537. Applying state law to the waiver issue would undermine the independent nature of the federal system of justice. This independence is no less important where the right to a jury trial under a state constitution is broader than that preserved by the Seventh Amendment. See *Herron v. Southern Pacific Co.*, 283 U.S. 91, 94 (1931) (applying federal law to uphold the trial court's decision to direct a verdict on contributory negligence, despite a contrary provision of the Arizona Constitution that reserved the issue for the jury, and observing that 'state laws cannot alter the essential character or function of a federal court')."

Although the *Financial Technology Partners* court did not apply the *Erie* doctrine in reaching in its decision, the court's order granting Wilshire's motion also examined the question under *Erie*. The court reached a conclusion about the impact of *Erie* different from the Seventh Circuit's conclusion in *IFC Credit*. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The court applied the outcome determinative test. Under this test, a rule of law is considered "substantive" if applying the federal rule over the state one would "significantly affect the result of

a litigation,"in a manner likely encourage forum-shopping and result in "inequitable administration of the laws." See *Snead v. Metropolitan Property & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001). The court concluded that, under this test, the validity of the jury trial waiver was a procedural rule because, under most circumstances, a properly instructed jury would not reach an outcome different than a court considering the same evidence would reach. It noted, moreover, that "even if submitting a case to a jury would in some cases result in a different outcome, this possibility is not strong enough to override the federal interest in maintaining an independent system of justice," citing *RTC Mortg. Trust 1994 N-1 v. Fidelity Nat. Title Ins. Co.*, 981 F.Supp. 334, 342 (D.N.J. 1997) ("In *Byrd*, the Supreme Court, conceding that the availability of a jury trial could be outcome determinative, 'did not think the likelihood of a different result is so strong as to require the federal practice . . . to yield to [a] state rule'" (citing *Byrd*, 356 U.S. at 540)). Having reviewed the matter, the court continues to believe that, because"[t]he question of a waiver of a federally guaranteed constitutional right" is necessarily "a federal question controlled by federal law," *Brookhart*, 384 U.S. at 4, waiver of the right to jury trial in federal court cannot be viewed simply as a matter of state contract law. This is particularly true since, in addition to guaranteeing the right to jury trial, the constitution created the federal courts as an "independent system for administering justice." *Byrd*, 356 U.S. at 537. This independence requires federal regulation of the right to jury trial in federal court. Stated differently, waiver of the right to jury trial in federal court implicates constitutional concerns that go beyond state contract law.

Like their counterparts in the Ninth Circuit, district courts in other circuits have also reached conflicting conclusions. Ashland relies on *GE Commerical*, a recent district court decision from the Middle District of Georgia. Like the Seventh Circuit, the *GE Commercial* court treated the issue as one of contract interpretation. It observed that enforcing the waiver would "require the court to ignore a sovereign state's determination as to how contracts should be interpreted." *GE Commercial*, 2009 WL 1409977 at *3. Two Texas district courts reached the opposite conclusion, rejecting the argument that state law governed the validity of a contractual jury wavier where the contract contains a choice of law provision selecting state law. See *TransFirst Holdings, Inc. v. Phillips*, Civil Action No. 3:06-CV-2303-P, 2007 WL 867264, * 2 (N.D. Tex. Mar. 22, 2007); *RDO Financial Services Co. v. Powell*, 191 F.Supp.2d 811, 812-13 (N.D. Tex. 2002). Neither court analyzed in issue in great depth; both relied on *Simler*'s statement that federal law controls the right to jury trial in federal court. See *id*.

Given the conflicting results reached in the cases cited above, the court concludes that the second requirement for interlocutory appeal is met. In particular, the Seventh Circuit's opinion in *IFC Credit* indicates that there exist substantial grounds for disagreement as to whether federal law controls the validity of a jury trial waiver contained in a contract that also provides that state law governs interpretation of the agreement. While most courts have interpreted *Simler* broadly in holding that federal law controls the right to jury trial in federal court, the Seventh Circuit interpreted that decision narrowly, and concluded that the validity of the waiver is an issue of contract law on which federal law has no bearing. At least one district court has adopted similar reasoning, while another has concluded that state law should control on policy-based grounds. The court thus finds that there

are substantial grounds for difference of opinion on the issue.

### 3. Whether Certification Would Materially Advance Termination of the Litigation

The third requirement for certification of an interlocutory appeal is a finding that an immediate appeal will materially advance or speed the ultimate termination of the litigation. See *Hansen*, 459 F.Supp.2d at 1000 ("[A]n interlocutory appeal must be likely to materially speed the termination of the litigation"). "This factor is linked to whether an issue of law is 'controlling' in that the court should consider the effect of a reversal by the court of appeals on the management of the case." *Id.* (citing *In re Cement Antitrust Litig.*, 673 F.2d at 1026). As noted, the court has concluded that the issue of law is a controlling one. If Wilshire prevailed following a court trial and Ashland appealed, the Ninth Circuit would order a new trial if it determined that Ashland was entitled to a jury trial and that a reasonable jury could have ruled in its favor. See *California Scents v. Surco Products, Inc.*, 406 F.3d 1102, 1109-1110 (9th Cir. 2005) ("The erroneous denial of a jury trial in a civil case is subject to harmless error analysis. The denial will be harmless only if no reasonable jury could have found for the losing party, and the trial court could have granted a directed verdict for the prevailing party" (citations and internal quotation marks omitted)). This would prolong the litigation unnecessarily.

As a consequence, the court concludes that the third requirement for certification of an interlocutory appeal is met. See *Chao v. Meixner*, Nos. 1:07-cv-0595-WSD, 3:08-cv-0013-JTC, 2008 WL 2691019, *4 (N.D. Ga. July 3, 2008) ("Third, an immediate interlocutory appeal will preserve the parties['] resources and accelerate the ultimate termination of the action. Preparing for and conducting a jury trial will cause the parties to spend extra time and expense beyond those that would be expended in a bench trial. Further, if the case proceeds to a jury trial without appeal, and then it is later determined that the defendants' jury trial demand should have been stricken, then the Court would be required to try the action again without a jury").

### III. CONCLUSION

For the reasons stated, the court denies Ashland's motion for reconsideration. Because all three requirements are met, the court grants Ashland's application for certification of an interlocutory appeal. The action will be stayed pending the Ninth Circuit's decision on acceptance of the appeal. The court directs Ashland to file an appeal with the Ninth Circuit within ten days of the date of this order.